# IN THE SUPREME COURT OF IOWA

No. 05 / 05-1006

Filed May 4, 2007

**BRIAN L. EVANS**,

Appellant,

vs.

**JUDY BENSON** and **BLUFFS PSYCHIATRIC ASSOCIATES, P.C.**,

Appellees.

---

Appeal from the Iowa District Court for Pottawattamie County, Charles L. Smith III, Judge.

Plaintiff in suit against medical care providers appeals from judgment for defendants. **AFFIRMED.**

James L. Sayre of James L. Sayre, P.C., Clive, for appellant.

Jeffrey A. Boehlert of Patterson, Lorentzen, Duffield, Timmons, Irish, Becker & Ordway, L.L.P., Des Moines, for appellee Judy Benson.

John M. French of Peters Law Firm, P.C., Council Bluffs, for appellee Bluffs Psychiatric Associates, P.C.

**LARSON, Justice.**

Brian Evans sued Judy Benson, a nurse, and her employer, Bluffs Psychiatric Associates, P.C., for invasion of privacy and negligent disclosure of confidential medical records. The case was tried by the court without a jury, and the court entered findings of fact and judgment in favor of the defendants. We affirm.

The plaintiff, Brian Evans, had been employed by Pella Corporation in its Shenandoah, Iowa plant, but his employment was terminated as the result of several problems experienced in that relationship. He had been reprimanded for excessive absenteeism and was warned of possible termination if his performance did not improve. These disciplinary matters were handled by Robert Larson, Pella's human resources manager. Evans expressed hostility toward Larson and admitted he had homicidal thoughts about him. At the urging of Evans' fiancée, he was evaluated by a clinical psychologist in November 2000, and the psychologist reported that Evans was highly irritable, had suicidal thoughts, and confirmed that Evans had homicidal thoughts about Larson. Later in November, Evans was evaluated by defendant Judy Benson, a registered nurse practitioner, who testified that Evans had exhibited signs of anxiety and suicidal thoughts. He also talked about Robert Larson and hurting him "real bad." Benson told Evans that she thought it was her professional responsibility to warn Larson of the danger posed by Evans.

Ms. Benson testified she understood her duty as a psychiatric nurse in such cases to be twofold:

> I have a duty to both protect and warn. My duty to protect, to protect any patient, in this case Mr. Evans, from doing anything that would harm him or harm another person. If Mr. Evans harms another person, that does irreparable harm to Mr. Evans as well.

The other thing . . . is that if someone is identified and I think there is a reasonable possibility that they will be harmed, I have to tell—contact them and tell them that this person has threatened to harm them. I don't have to tell them anything else. And in this case, I did not.

Benson testified that Evans was experiencing "command hallucinations"—voices that told him what to do, and a voice told him to harm himself. He stated he had access to a gun, and Benson was "very, very worried" about what might happen. Evans' fiancée told Benson that "all [Evans] could think about was harming Bob Larson." In her thirty years of experience, she had never before felt the need to contact a third person to warn them about a patient.

Benson discussed Evans' case with a psychiatrist, a judicial referee, and the hospital's attorney. This team decided that Evans should be examined for possible hospitalization under Iowa Code chapter 229A (mental commitment).

On November 30, 2000, the day Evans was examined by Benson, Benson called Robert Larson to inform him of her concerns for his safety. That call, according to Evans, caused Evans' employment to be terminated. The district court disagreed, finding

the Plaintiff has failed to establish by any substantial evidence that the phone call was in fact the cause of Plaintiff's termination or his damages. On the contrary, the testimony of Robert Larson and Plaintiff's personnel records clearly established that his job was in jeopardy and he was subject to termination if and when he returned to work following a lengthy, unexcused absence in November of 2000.

This finding by the court is well supported by the record. The acceptable absenteeism rate at Pella was two percent. At the time Evans' employment was terminated, his absenteeism rate was 23.04%. Evidence was introduced that, based on Evans' high absentee rate and his failure to respond to two earlier "corrective actions" by Pella, Evans was going to be

terminated regardless of Benson's telephone call. Larson testified that the production manager recommended Evans' termination before the telephone call was received.

The trial court found that Evans failed to establish a key element of his claim, proximate cause. Our review of a trial court's finding in a jury-waived case is for correction of errors at law, and the trial court's findings of fact have the effect of a special verdict. *Data Documents, Inc. v. Pottawattamie County*, 604 N.W.2d 611, 614 (Iowa 2000). This means that a district court's decision will not be set aside unless it was induced by an error of law. *Papenheim v. Lovell*, 553 N.W.2d 328, 328 (Iowa 1996). In this case, Evans had the burden of proving proximate cause. Having failed to do so in the district court, he can prevail on appeal only if he shows proximate cause was established as a matter of law. *See Pub. Fin. Co. v. Van Blaricome*, 324 N.W.2d 716, 718 (Iowa 1982) ("We can interfere with the trial court's determination of evidentiary insufficiency against the party having the burden of proof only if the evidence is so overwhelming that the party carried the burden as a matter of law."). The plaintiff in this case has not made such a showing.

**AFFIRMED.**